UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LEE GLEASON,<br><br>    Plaintiff,<br><br>v.<br><br>G. PLACENCIA,<br><br>    Defendant. | Case No. 1:19-cv-00539-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE DENIED<br><br>(ECF NO. 34)<br><br>FOURTEEN-DAY DEADLINE |

**I.    BACKGROUND**

Thomas Gleason ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This case is proceeding on Plaintiff's claims against defendant G. Placencia ("Defendant") for excessive force in violation of the Eighth Amendment and retaliation in violation of the First Amendment. (ECF Nos. 10, 27, & 28).

On December 17, 2019, Defendant filed a motion to dismiss Plaintiff's retaliation claim. (ECF No. 34). On December 26, 2019, Plaintiff filed his opposition. (ECF No. 37). On December 31, 2019, Defendant filed his reply. (ECF No. 38).

For the reasons that follow, the Court will recommend that Defendant's motion to dismiss be denied.

\\\

1

## II. PLAINTIFF'S SECOND AMENDED COMPLAINT

### a. Summary

The events alleged in the complaint occurred at the Delano State Prison reception center building.

On March 20, 2017, at approximately 2:30 p.m., Defendant gave all the United States postal mail to an inmate to pass out. The inmate threw out just about all the mail for the black inmates. Plaintiff personally got three of his letters out of the trash.

Plaintiff confronted Defendant about the matter, and Defendant told Plaintiff not to tell him how to run the unit. Plaintiff then asked for a 602[1] form. Defendant asked Plaintiff why he wanted one, and Plaintiff replied "because I'm going to 602 this matter." Defendant then said "turn around and cuff-up." Defendant then took Plaintiff into the sally port, pressed Plaintiff's face against the wall, and hit Plaintiff on the side of the head and in the ribs. Defendant then said "listen[,] I run this fucking building the way I see fit do you hear me." Plaintiff said "yes," because he did not want to be hit again. Defendant then asked Plaintiff if he still wanted the 602, and Plaintiff replied "no." Defendant then slapped Plaintiff on the side of the head and said, "yeah that's what I thought[,] now go lock-up shit head."

Plaintiff alleges that Defendant "did chill my constitutional rights towards fruture [sic] First [A]mendment activity and make me [illegible] about writing a 602 at all."

### b. Screening Order

The Court screened Plaintiff's Second Amended Complaint, and ordered that this case proceed on Plaintiff's claims against Defendant for excessive force in violation of the Eighth Amendment and retaliation in violation of the First Amendment. (ECF Nos. 10, 27, & 28).

## III. DEFENDANT'S MOTION TO DISMISS

### a. Defendant's Position

Defendant points out that "Gleason alleges that he orally requested a grievance form,

---

[1] A 602 is also referred to as a grievance.

and threatened to file a grievance against Defendant Placencia, and that in response Placencia pressed Gleason's face against a wall and punched him in the ribs." (ECF No. 34-1, p. 1). Defendant argues that "Gleason's oral statements are not the constitutionally protected conduct necessary to support a claim for retaliation." (Id.).

Moreover, even if the oral statements were protected, Defendant is entitled to qualified immunity because "[i]t was not clearly established at the time (in early 2017) that such oral statements were constitutionally protected." (Id. at 5). "There is no Ninth Circuit or Supreme Court precedent establishing that Gleason's alleged conduct was protected." (Id. at 7). Additionally, there is no robust census of persuasive authority. (Id.).

### b. Plaintiff's Position

Plaintiff argues that his oral threat to file a grievance was protected conduct, and that it was clearly established that it was protected conduct when he told Defendant that he was going to file a grievance.

### c. Legal Standards

#### i. *Motions to Dismiss*

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. See Iqbal, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order

to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

*ii. First Amendment Retaliation Claims*

A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Watson v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the

4

courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

### iii. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts alleged by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Id. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

d. Analysis

The issues before this Court are whether a threat to file a grievance is protected conduct, and if so, whether this was clearly established at the time of the incident alleged in the complaint. Under Ninth Circuit precedent, the answer to both questions is yes.[2]

Defendant appears to argue that there is no Ninth Circuit case law on point. However, the Ninth Circuit addressed these issues in Entler v. Gregoire, 872 F.3d 1031 (2017):

---

[2] Because Plaintiff has alleged that he threatened to file a grievance regarding the incident alleged in the complaint, and because this is protected conduct, the Court need not, and will not, address whether Plaintiff engaged in protected conduct by requesting a grievance form.

The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts, for "[w]ithout those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

The dichotomy that the district court drew between formal and informal grievances has no constitutional underpinning; nor does the distinction between a threat to initiate litigation and the litigation. To the contrary, "[t]he applicability of the constitutional right to redress of grievances does not hinge on the label the prison places on a particular complaint," *Brodheim v. Cry*, 584 F.3d 1262, 1267 n.4 (9th Cir. 2009), and embraces threats to sue, *Jones v. Williams*, 791 F.3d 1023, 1035–36 (9th Cir. 2015). Thus, in *Jones*, where the prisoner was sanctioned for verbally confronting the Penitentiary's Assistant Food Services Manager in the prison's kitchen "with complaints of discrimination and a threat to sue," we held that summary judgment dismissing plaintiff's retaliation claim was improper because "Jones's [verbal] complaints of discrimination to his supervisors and statements of intention to file suit were conduct protected by the First Amendment." *Id.*

The district court should have recognized, therefore, that the form of the complaints—even if verbal, let alone, as here, written—is of no constitutional significance, and that threats to sue fall within the purview of the constitutionally protected right to file grievances. *See Hargis v. Foster*, 312 F.3d 404, 411 (9th Cir. 2002) (reversing summary judgment on a prisoner's First Amendment claim because "a jury could reasonably conclude that the prison officials acted unreasonably in characterizing [a prisoner's verbal threat to sue] as an attempt to coerce ...").

…

There remains the issue of qualified immunity. Appellees would not be entitled to prevail if the constitutional right violated "was clearly established at the time of the challenged conduct." *City of San Francisco v. Sheehan*, ––– U.S. –––, 135 S.Ct. 1765, 1774, 191 L.Ed.2d 856 (2015). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Mullenix v. Luna*, ––– U.S. –––, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)). "In the Ninth Circuit, we begin our inquiry by looking to binding precedent. If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." *Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004) (citation omitted).

Although there is no Supreme Court case directly on point, there is clear Ninth Circuit precedent.

First, it was, of course, clearly established when Entler filed his grievances in 2012 that he had the "constitutional right" to do that, *see Turner*, 482 U.S. at 84, 107 S.Ct. 2254—a right that did not "hinge on the label" the prison placed on his complaints. *Brodheim*, 584 F.3d at 1271 n.4. Nor could the prison's officials "escape constitutional scrutiny by citing a legitimate penological interest" in the absence— as here—of a "valid, rational connection" between the adverse action imposed on the prisoner and the government's stated interest. *Id.* at 1272–73. And it was also clearly established that Entler had the time-honored right to pursue civil litigation, a right liberally exercised for over forty years. *See* William Bennett Turner, *When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts*, 92 Harv. L. Rev. 610, 610–11 (1979) (recognizing that "[p]risoners, like other people, may sue state and local officials under 42 U.S.C. § 1983, to redress the deprivation of federal constitutional rights" and discussing an "upsurge in volume" of such suits beginning in the 1970s).

It was also beyond cavil that Entler's grievances were the first requisite steps in the pursuit of civil litigation. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("[E]xhaustion is now required for all action[s] ... brought with respect to prison conditions, whether under § 1983 or any other Federal law."). The threat of civil litigation if a prisoner's complaints are not redressed is implicit in every grievance; explicitly articulating that threat as a precursor to initiating civil litigation does not suddenly make that threat more intimidating or coercive.

Thus, in the analogous Title VII retaliation context, we noted—twenty years before Entler was punished—that "[w]e see no legal distinction to be made between the filing of a charge which is clearly protected, and threatening to file a charge." *Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n.3 (9th Cir. 1982) (citation omitted).

We find the *Gifford* footnote persuasive since we see no material distinction between retaliation in the Title VII context and prisoner retaliation. The sanctity of a constitutional right is at least of equal moment as a statutory right. And even though, in the face of Ninth Circuit precedent, we need not resort to out-of-circuit caselaw, we note with approval two out-of-circuit district court cases involving prisoner litigation.

In *Sprau v. Coughlin*, 997 F.Supp. 390 (W.D.N.Y. 1998), the district court held that "plaintiff's conduct in threatening to file a [prisoner] complaint was protected by the First Amendment's guarantee of the right to petition the government for redress of grievance." *Sprau*, 997 F.Supp. at 393.

> Similarly, in *Carter v. Dolce*, 647 F.Supp.2d 826 (E.D. Mich. 2009), the district court held that there was "little difference between retaliating against a [prisoner] for filing a grievance, and retaliating for threatening to file one." *Carter*, 647 F.Supp.2d at 834. The court cited as analogous two Sixth Circuit decisions, one of which expressly relies on the *Gifford* footnote: In *Jackson v. City of Columbus*, 194 F.3d 737, 756–57 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the circuit court held that an employee engages in protected activity under the First Amendment when he threatens to file a lawsuit on a matter of public concern, and in *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190 (6th Cir. 1986), the circuit court held that there " 'is no legal distinction ... between the filing of a charge which is clearly protected ... and threatening to file a charge' " under Title VII's anti-retaliation provision, *Polk*, 801 F.2d at 200 (quoting *Gifford* footnote). The court in *Carter* further recognized that "threatening to resort to the formal grievance process is itself the first step in that process." *Carter*, 647 F.Supp.2d at 834.
>
> In essence, it is illogical to conclude that prison officials may punish a prisoner for *threatening* to sue when it would be unconstitutional to punish a prisoner for *actually* suing. Thus, once again, as we held in *Hargis*, ten years before Entler was sanctioned, a threat to sue—even if verbal—may not *ipso facto* rise to the level of coercion to support prison retaliation.
>
> Taking the complaint as true in the face of a 12(c) motion to dismiss on the pleadings, *see Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ("We must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party"), we cannot conclude that a reasonable official would not have understood that disciplining Entler for threatening to file a civil suit was constitutionally impermissible. Therefore, on the papers before us, Appellees are not entitled to qualified immunity for Entler's threats to initiate civil litigation.

Entler v. Gregoire, 872 F.3d 1031, 1039–43 (9th Cir. 2017) (footnotes omitted).

In this case, Plaintiff has alleged that Defendant gave mail to an inmate to pass out. That inmate threw out almost all of the black inmates' mail, and Plaintiff had to get of his letters out of the trash. Plaintiff confronted Defendant about the matter, and Defendant told Plaintiff not to tell him how to run the unit. Plaintiff then asked for a grievance form, and told Defendant that he was going to file a grievance regarding the matter. Instead of giving Plaintiff a grievance form, Defendant responded by assaulting Plaintiff, and telling Plaintiff that he "run[s] this fucking building the way [he] see[s] fit…." After the assault Defendant asked Plaintiff if he still wanted a grievance form, and Plaintiff said no.

These allegations state a quintessential claim for retaliation, and the fact that Plaintiff orally threatened to file a grievance, but was allegedly assaulted by Defendant before he had the chance to actually file the grievance, does not change the analysis.

As discussed above, threatening to sue is protected conduct. While Plaintiff did not explicitly threaten to sue, Plaintiff allegedly threatened to file a grievance. Because of the exhaustion requirement, "[t]he threat of civil litigation if a prisoner's complaints are not redressed is implicit in every grievance…." (Id. at 1042). Thus, Plaintiff's threat to file a grievance was also a threat to sue, which is protected conduct.

Defendant makes much of the fact that Plaintiff threatened to file a grievance, but was allegedly assaulted before he actually filed a grievance. However, the Court in Entler made clear that "the distinction between a threat to initiate litigation and the litigation" "has no constitutional underpinning." (Id. at 1039). The same is true in regards to the distinction Defendant attempts to make between threats to file grievances and filing grievances. The Court in Entler stated that "the form of the complaints … is of no constitutional significance…." (Id.). The Court in Entler also quoted Carter v. Dolce, 647 F.Supp.2d 826 (E.D. Mich. 2009), with approval, in which "the district court held that there was 'little difference between retaliating against a [prisoner] for filing a grievance, and retaliating for threatening to file one.'" Entler, 872 at 1042 (alteration in original) (quoting Carter, 647 F.Supp.2d at 834).

Thus, Plaintiff engaged in protected conduct when he threatened to file a grievance.

Next, the Court turns to Defendant's argument that he is entitled to qualified immunity. In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts alleged by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

As to the first prong, as discussed above, Plaintiff has sufficiently alleged that he was retaliated against in violation of his First Amendment rights.

As to the second prong, as discussed in Entler, a threat to sue is protected conduct, and this was clearly established at (if not before) the time of the incident in Entler, which occurred

in 2012. As the incident alleged in Plaintiff's complaint occurred in 2017, it was clearly established at the time of the incident that threatening to file a grievance, which is also implicitly a threat to initiate litigation, is protected conduct.[3] Thus, Defendant is not entitled to qualified immunity.[4]

## IV. RECOMMENDATION

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant's motion to dismiss be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\
\\\

---

[3] In arguing that he is entitled to qualified immunity, Defendant points out that "[t]he magistrate judge here has previously issued findings and recommendations in an unrelated case stating that 'the existing precedent in this district and the other districts in California had placed beyond debate in early 2017 that verbal conduct is protected conduct for purposes of a retaliation claim.' Williams v. Amay, No. 1:17-cv-01332-AWI-EPG (PC), 2018 U.S. Dist. LEXIS 150309, at *23 (E.D. Cal. Aug. 31, 2018). Those findings and recommendations were not adopted. See Williams v. Amay, No. 1:17-cv-01332-AWI-EPG (PC), 2019 WL 6728054, at *7 (E.D. Cal. Mar. 29, 2019) (declining to adopt findings and recommendations and finding defendants were entitled to qualified immunity)." (ECF No. 34-1, p. 6).

While Defendant is correct that this Court's findings and recommendations in Williams were not adopted, the district judge's order in Williams is not on point. As the district judge in Williams pointed out, "[w]ith respect to protected activity, the Complaint appears to expressly identify three activities: (1) requesting Wellbutrin, (2) explaining to Dr. Amay his past experience with other antidepressants, and (3) telling Dr. Amay what 15 C.C.R. § 3364.1(a)(5)(G) states." Williams, 2019 WL 6728054, at *6. Williams had nothing to do with whether a threat to file a grievance is protected conduct, which is the issue in this case. Moreover, in granting qualified immunity, the district judge stated "Defendants maintained medical treatment that complied with the Eighth Amendment, albeit not Plaintiff's choice of treatment before and after Plaintiff engaged in First Amendment protected conduct. The Court is aware of no cases, and Plaintiff cited none, that would put a reasonable official on notice that such conduct violated the First Amendment." Id. at *7. This grant of qualified immunity had nothing to do with the fact that the allegedly protected conduct was verbal, rather than in writing.

[4] In his reply, defense counsel argues that Plaintiff made threatening comments, and "requests that the Court remind Plaintiff Gleason of his obligation of civility in this litigation." (ECF No. 38, p. 4). Plaintiff does have an obligation of civility in this litigation, but the Court does not read Plaintiff's opposition as including a threat to either the Court or defense counsel.

Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 8, 2020**

/s/ Erin P. Gros

UNITED STATES MAGISTRATE JUDGE